# IN THE DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| SUSAN BURKETT O'HARE, individually and SUSAN BURKETT O'HARE as Administrator of the Estate of PETER ERIC O'HARE | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO: |
| v. | ) ) ) | NO: _____ |
| GHP GROUP, INC. d/b/a DYNA-GLO; | ) ) ) ) | |
| Defendant. | ) | **JURY TRIAL DEMAND** |

## COMPLAINT

COME NOW, Plaintiffs Susan B. O'Hare, Individually and Susan B.

O'Hare as the Administrator of the Estate of Peter E. O'Hare and hereby file this

Complaint, showing the court as follows:

## INTRODUCTION

1.

On May 15, 2023, Peter O'Hare was using a propane heater designed and

manufactured by Defendant GHP Group, Inc. d/b/a Dyna-Glo. The propane heater

was designed in a manner that would permit the dangerous escape of unignited

propane when the propane tank was connected to the Defendant's propane heater.

Defendant failed to warn Mr. O'Hare of this dangerous condition. These failures

caused unignited propane to build up and combust causing horrible injuries to Peter O'Hare and his eventual death on June 13, 2023.

## PARTIES AND JURISDICTION

2.

Plaintiff Susan O'Hare was the lawfully married spouse of Peter O'Hare and is the lawfully appointed Administrator for the Estate of Peter O'Hare. Susan O'Hare is a resident of the State of Tennessee.

3.

Defendant GHP Group, Inc., (hereinafter "Defendant GHP") is an Illinois Corporation, engaged in business in the State of Georgia, with its principle place of business located at 6440 W Howard Street, Niles, Illinois 60714. Defendant GHP may be served with process through its registered agent, Ronald Cox, at it's Georgia office located at 400 Interstate N Parkway SE, Suite 570, Atlanta, Georgia 30339.

4.

Defendant GHP also does business under the name Dyna-Glo and markets and sells products under that name.

5.

Defendant designs, creates warning labels for, manufactures, and sells portable propane heaters under the name Dyna-Glo, including those sold,

marketed, and used in the State of Georgia.

6.

Defendant GHP is engaged in the business of designing, manufacturing, fabricating, producing, assembling, importing, marketing, distributing, selling, and/or otherwise placing into the stream of commerce various heating products and accessories, including the Dyna-Glo, Model RMC-LPC80 DG, serial number #1721ARG0549, rated as 80,000 BTU/hour (the "Subject Heater").

7.

Defendant is subject to the venue of this Court in that its principal place of business and registered agent and office is located within this State, District, and Division, and therefore it has submitted itself to the venue of this court.

8.

Defendant is subject to the jurisdiction of this Court under 28 U.S.C. § 1332 because the domiciles of Plaintiff and Defendant are diverse and the amount in controversy exceeds $75,000.

9.

Counsel for Defendant has agreed to acknowledge and accept service of this Complaint.

## FACTS

10.

At a time prior to May 15, 2023, Defendant designed, fabricated, manufactured, produced, assembled, imported, marketed, distributed, sold and/or otherwise placed the Subject Heater into the stream of commerce.

11.

Defendant designed, fabricated, manufactured, produced, assembled, marketed, distributed, and sold the Subject Heater to provide temporary heating to buildings under construction, alteration, or repair. Defendant also creates the warning labels for the Subject Heater, including those in the manual and box.

12.

Upon information and belief, Defendant conducts business in the United States, including in the State of Georgia, at retailers and specialty retailers and over the Internet at www.ghpgroupinc.com. Defendant is registered to do business in the State of Georgia. Defendant has purposefully availed itself of the jurisdiction of this Court.

13.

Prior to May 15, 2023, Peter O'Hare purchased the Subject Heater.

4

14.

On May 15, 2023, Peter O'Hare was operating the Subject Heater while working on a project in Hixson, Tennessee.

15.

Due to the design, the Subject Heater permitted unignited propane to collect in the area Mr. O'Hare was occupying.

16.

The unignited propane pooled in the area despite ventilation.

17.

The pooled propane then ignited causing severe burns to Mr. O'Hare, causing his clothing to ignite, and become engulfed in flames.

18.

As a direct and proximate result Mr. O'Hare sustained significant and severe burn injuries, which caused Mr. O'Hare to endure great physical pain, suffering, loss of enjoyment of life, permanent scarring, physical impairment, permanent disfigurement, mental anguish, emotional distress, and which caused Plaintiffs to incur medical expenses mostly in the State of Georgia. Plaintiffs incurred other economic damages.

19.

Mr. O'Hare was taken via helicopter to the Joseph M. Still Burn Center in Wellstar Cobb Hospital located in Austell, Georgia. Mr. O'Hare was thereafter transported to the Joseph M. Still Burn Center in Augusta, Georgia.

20.

Mr. O'Hare incurred over $7,000,000 in medical expenses for treatment he received in the State of Georgia.

21.

Mr. O'Hare suffered in pain until his death on June 13, 2023 in the State of Georgia.

22.

Prior to May 15, 2023, Defendant was aware of the unreasonably dangerous design of its products, including similar heaters as the Subject Heater.

23.

Upon information and belief, the following prior occurrences are known:

- On or about March 3, 2021, a similar propane heater designed by Defendant was utilized by persons in Marquette County, Michigan. The heater, despite being in a shut off position, permitted propane to escape causing propane to escape with an unproven flame. This caused injuries to the users of the propane heater.

6

- On or about April 22, 2019, a similar propane heater designed by Defendant was utilized by persons in Harlan County, Kentucky. The heater ignited a fire and caused explosions leading to serious burn injuries to those persons and death.

- On or about February 18, 2013, a resident of Myrtle Beach, South Carolina, was using a similar propane heater designed by Defendant which caused burns to the user of the heater.

- In December 2010, a similar propane heater designed by Defendant caused burns to the user of the heater in Joppa, Maryland. The user's clothes caught fire causing burns.

24.

Defendant knew the Subject Heather was unreasonably dangerous. The Subject Heater is currently located in the State of Georgia.

## COUNT I

## STRICT LIABILITY

25.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 24 above as if fully set forth herein.

7

26.

Defendant designed, manufactured, assembled, marketed, distributed, and sold the Subject Heater.

27.

Defendant is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable heaters, including the Subject Heater, to consumers within the stream of commerce.

28.

Defendant expected the Subject Heater, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

29.

The Subject Heater was without substantial change in the condition it was originally designed, manufactured, assembled, marketed, distributed, and sold by Defendant at the time of the incident.

30.

At the time the Subject Heater left Defendant's control, and at all times complained of, safer designs were available that would have eliminated the risk of the Subject Heater causing the injuries at issue without substantially impairing the usefulness and intended purpose of the product.

8

31.

The Subject Heater was unreasonably dangerous and defective in that its design and construction did not incorporate a design and/or device to prohibit the escape of unignited propane when used in accordance with Defendant's specifications.

32.

A technologically and economically feasible safety device would have prevented the injuries and death at issue in the present case.

33.

Furthermore, Defendant created inadequate and ineffective warning labels wherein Defendant failed to warn Mr. O'Hare of this unreasonably unsafe condition and functioning of the Subject Heater.

34.

The defective and unreasonably dangerous condition of the Subject Heater and Defendant's failure to warn Mr. O'Hare of the same was the direct and sole proximate cause of Mr. O'Hare's injuries and damages which include, but are not limited to past medical expenses, economic loss, pain and suffering, scarring and disfigurement, mental anguish, emotional distress, and loss of enjoyment of life.

35.

The defective and unreasonably dangerous condition of the Subject Heater

and Defendant's failure to warn Mr. O'Hare of the same was the direct and sole proximate cause of Mr. O'Hare's death.

36.

The defective and unreasonably dangerous condition of the Subject Heater and Defendant's failure to warn Mr. O'Hare of the same was the direct and sole proximate cause of Mrs. O'Hare's injuries and damages which include, but are not limited to past medical expenses, economic loss, and loss of consortium.

37.

Based on the foregoing, Defendant is strictly liable under applicable law.

## COUNT II

## PRODUCT LIABILITY NEGLIGENCE

38.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 37 above as if fully set forth herein.

39.

Defendant, as the manufacturer, seller, and distributor of the Subject Heater, negligently manufactured, designed, sold, and distributed the Subject Heater in question.

10

40.

Defendant had a duty to exercise ordinary and reasonable care in manufacturing, designing, selling, and distributing the Subject Heater.

41.

Furthermore, Defendant had a duty to exercise ordinary and reasonable care in issuing warnings regarding the Subject Heater in question.

42.

On the date the Subject Heater was sold, it was defective and unreasonably dangerous in several ways, including but not limited to the following:

(a)     the Subject Heater was manufactured in such a way that it was unfit and unsafe for its intended use;

(b)     Defendant failed to design and manufacture the Subject Heater with an appropriate automatic shutoff system when there is an unproved ignitor or pilot;

(c)     Defendant failed to design and manufacture the subject Heater with an ignition system that permits unburned propane to escape with an unproven ignition system or pilot;

(a)     Defendant failed to implement safer, technologically feasible, and economically practical design alternatives or process for the Subject Heater;

(b)     The Subject Heater was unreasonably unsafe; and

(c)     The Subject Heater was unreasonably dangerous.

43.

Defendant breached its duties to exercise ordinary and reasonable care in manufacturing, designing, selling, and distributing the Subject Heater in question.

44.

Furthermore Defendant breached its duties to exercise ordinary and reasonable care in failing to properly issue adequate and sufficient warnings with respect to said Subject Heater.

45.

In addition, Defendant was negligent in that it failed to properly warn all potential users of the Subject Heater, including but not limited to Peter O'Hare, as to the dangers regarding its use causing unignited propane to accumulate.

46.

Furthermore, Defendant was negligent for failing to properly issue a warning as to the dangers involved with the Subject Heater regarding its unreasonably unsafe condition that allowed unignited propane to escape.

47.

Defendant's negligent manufacture, design, and failure to warn were the proximate cause of the injuries sustained by Peter O'Hare and Plaintiffs in the subject incident.

48.

Accordingly, Defendant is liable to Plaintiffs for all damages proximately resulting from this incident.

49.

Defendant's negligence, which caused the Subject Heater to be defective and unreasonably dangerous condition and Defendant's failure to warn Mr. O'Hare of the same, was the direct and sole proximate cause of Mr. O'Hare's injuries and damages which include, but are not limited to past medical expenses, economic loss, pain and suffering, scarring and disfigurement, mental anguish, emotional distress, and loss of enjoyment of life.

50.

Defendant's negligence, which caused the Subject Heater to be defective and unreasonably dangerous condition and Defendant's failure to warn Mr. O'Hare of the same, was the direct and sole proximate cause of Mr. O'Hare's death.

51.

Defendant's negligence, which caused the Subject Heater to be defective and unreasonably dangerous condition and Defendant's failure to warn Mr. O'Hare of the same, was the direct and sole proximate cause of Mrs. O'Hare's injuries and damages which include, but are not limited to past medical expenses, economic loss, and loss of consortium.

## COUNT III

## BREACH OF WARRANTIES

52.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 51 above as if fully set forth herein.

53.

Express warranties were provided with the Subject Heater in question. Defendant breached these express warranties with regard to the Subject Heater, in that they created affirmations of fact or promise, including a representation regarding the safety of the Subject Heater.

54.

Defendant breached these express warranties in that the Subject Heater was dangerous and not safe as described in this Complaint. Defendant's violations of these express warranties constitutes a violation of applicable law.

55.

Defendant breached the implied warranty of merchantability as provided by Defendant in that the Subject Heater in question was not merchantable and was in fact defective when it was sold. In addition the Subject Heater in question was not merchantable in a number of ways, including but not limited to, the following:

(a)     the Subject Heater was manufactured in such a way that it was unfit and unsafe for its intended use;

(b)     Defendant failed to design and manufacture the Subject Heater with an appropriate automatic shutoff system when there is an unproved ignitor or pilot;

(c)     Defendant failed to design and manufacture the subject Heater with an ignition system that permits unburned propane to escape with an unproven ignition system or pilot;

(d)     Defendant failed to implement safer, technologically feasible, and economically practical design alternatives or process for the Subject Heater;

(e)     The Subject Heater was unreasonably unsafe; and

(f)     The Subject Heater was unreasonably dangerous.

Defendant's breach of implied warranty of merchantability resulted in injuries to Plaintiffs, including but not limited to damages for medical expenses, lost wages, pain and suffering, loss of earning capacity, death, loss of consortium, and other necessary expenses and damages arising from the injuries sustained by Peter O'Hare and Plaintiffs.

57.

Defendant breached the implied warranty of fitness for a particular purpose, in that the Defendant knew, at the time of placing the Subject Heater in the stream of commerce, the potential user of the Subject Heater was relying upon Defendant's skill and judgment that the Subject Heater would be suitable for its intended purpose. In particular the breaches of the implied warranty of fitness for a particular purpose included, but are not limited to the following:

(a) the Subject Heater was manufactured in such a way that it was unfit and unsafe for its intended use;

(b) Defendant failed to design and manufacture the Subject Heater with an appropriate automatic shutoff system when there is an unproved ignitor or pilot;

16

(c)     Defendant failed to design and manufacture the subject Heater with an ignition system that permits unburned propane to escape with an unproven ignition system or pilot;

(g)     Defendant failed to implement safer, technologically feasible, and economically practical design alternatives or process for the Subject Heater;

(h)     The Subject Heater was unreasonably unsafe; and

(i)     The Subject Heater was unreasonably dangerous.

58.

Defendant's breach of the implied warranty of fitness for a particular purpose resulted in damages and permanent injuries to Plaintiffs and Peter O'Hare, including medical expenses, lost wages, pain and suffering, loss of earning capacity, death, and other damages incurred as a result of Defendant's breach of the above warranty.

59.

The breach of the implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose and breach of express warranties, on the part of Defendant, caused and contributed to Plaintiffs' and Peter O'Hare's injuries and damages as described herein.

60.

Said breaches of warranties were the proximate cause of the incident in which Peter O'Hare was injured, caused him to incur medical expenses, lost wages, loss of earning capacity, pain and suffering, death, and other necessary expenses, for which he is entitled to a recovery.

61.

The breaches of warranties, as described above on the part of the Defendant, caused Plaintiff Susan O'Hare's damages, including damages for loss of services, consortium, and companionship.  Plaintiff Susan O'Hare is entitled to recover damages for the loss of services, consortium, and companionship in connection with injuries and death to her husband Peter O'Hare.

## **COUNT IV**

## **PUNITIVE DAMAGES**

62.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.

The acts and omissions of the Defendant demonstrate fraud, intentional misconduct, willful and wanton misconduct, oppression, malice and a conscious

18

indifference to the consequences, including the safety, health and welfare of Mr. O'Hare.

64.

The acts and omissions of the Defendant was accompanied by aggravating circumstances.

65.

Accordingly, Defendant is liable for uncapped punitive damages to Plaintiffs.

66.

Punitive damages should be awarded to Plaintiffs and against Defendant to deter Defendant from repeated misconduct as set forth in this Complaint.

WHEREFORE, Plaintiffs respectfully request the following:

A.   That Summons and process be issued with regard to Defendant;

B.   That Plaintiffs have a trial by jury;

C.   That Plaintiffs recover a judgment against the Defendant for compensatory damages, including past medical expenses, pain and suffering and disfigurement, loss of earning capacity, death, and lost wages of an amount to be determined by the enlightened conscience of the jury;

19

D.    That Susan O'Hare recover a judgment against the Defendant for loss of consortium, services, and companionship, due to the injuries sustained by her husband, Peter O'Hare, in an amount to be determined by the enlightened conscience of the jury.

E.    That Plaintiffs be awarded all costs of this action; and

F.    That Plaintiffs have such other and further relief as the court deems just and proper.

The undersigned certify that this pleading has been prepared in accordance with LR 5.1.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

This 3rd day of May, 2024.

LOURIE, CHANCE, FORLINES, CARTER & KING, PC

BY    */s/ Andrew J. King*
LANCE D. LOURIE
Georgia Bar No: 458520
STEPHEN R. CHANCE
Georgia Bar No: 120395
ANDREW J. KING
Georgia Bar No: 926908
MAX M. WALLACE II
Georgia Bar No: 808564

5607 Glenridge Drive
Building 2, Suite 500
Atlanta, Georgia 30342
lance@louriechance.com
stephen@louriechance.com

andrew@louriechance.com
max@louriechance.com

CLEMENTS LAW FIRM, LLC


BY     _James W. Clements III_
JAMES W. CLEMENTS III
Georgia Bar No: 130049
*Pro Hac Vice* Application Forthcoming

1010 Market Street
Suite 401
Chattanooga, TN 37402
(423) 752-4009
jay@tombiblelaw.com